IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-497-CV





KATHLYN LITTLEFIELD,



 APPELLANT


vs.





DIRECTOR, STATE EMPLOYEES WORKERS' COMPENSATION DIVISION,


STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 91-16328, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 




 Appellant, Kathlyn Littlefield, sought workers' compensation benefits for an on-the-job injury she incurred while employed at the Travis State School. Following a jury verdict
for partial temporary benefits and a resulting take-nothing judgment, Littlefield appeals. We will
affirm.



BACKGROUND


 Littlefield was injured in the course of her employment with the Travis State School
on July 10, 1989. Travis State School is self-insured pursuant to the workers' compensation law
and coverage is provided by the Director, State Employees Workers' Compensation Division,
State of Texas (the "State"). The State paid workers' compensation benefits totalling $17,331.43
to Littlefield.

 At trial, the jury found that (1) Littlefield received an injury in the course and scope
of her employment; 2) the injury was not a producing cause of any total incapacity; and (3) the
injury was a producing cause of partial incapacity from July 10, 1989 until November 6, 1989. 
Based upon the jury's findings and after allowing the State credit for the compensation previously
paid to Littlefield, the court rendered a take-nothing judgment. Littlefield appeals, raising four
points of error that challenge the legal and factual sufficiency of the evidence regarding the jury's
finding of partial incapacity and its failure to find any period of total incapacity.



DISCUSSION


 In deciding a no-evidence point, we must consider only the evidence and inferences
tending to support the finding of the trier of fact and disregard all evidence and inferences to the
contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986), cert. denied, 111 S.
Ct. 135 (1990); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). When reviewing a jury
verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the
evidence and should set aside the judgment only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986); In re Estate of King, 244 S.W.2d 660, 661 (Tex. 1951); see also Pool v. Ford Motor Co.,
715 S.W.2d 629 (Tex. 1986). See generally William Powers, Jr. & Jack Ratliff, Another Look
at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515 (1991).

 Littlefield maintains that the medical evidence introduced at trial establishes that
she sustained some period of total incapacity. She contends that the jury's total disregard of the
evidence and failure to find that she sustained some period of total incapacity was unjust and
against the overwhelming evidence admitted at trial. Littlefield relies on the records of four
physicians for her conclusion that the jury should have found some period of total incapacity: (1)
Dr. J. A. Henderson, (2) Dr. Michael Edmond, (3) Dr. Michael G. Hummer, and (4) Dr. James
L. Smith, Jr.

 Littlefield cites the following portions of the medical records to bolster her
contentions: In a report dated July 12, 1989, Dr. J. A. Henderson, M.D., stated Littlefield could
"return to work on the 18th tentatively though she may well not be able to make this." In addition
to Dr. Henderson's report, records from Austin Regional Clinic indicate periods of total
incapacity. The Clinic's report of August 15, 1989, advised "no work through August 18, 1989." 
A Clinic disability slip dated October 19, 1989, provides Littlefield a "limited release to work on
October 19, 1989," but also includes a written approval from the doctor to "cover absences from
work on 10-3-89 and 10-15-89." Another disability slip from Austin Regional Clinic dated
October 11, 1989, gives Littlefield a limited release to work on October 12, 1989, but also
indicates that Littlefield was "off work from 10-6-89 to 10-11-89." In a neurological report dated
July 28, 1989, Dr. Michael Edmond, M.D., stated that Littlefield should "follow up with Dr.
Henderson in two weeks and be released to return to the job at that point." Dr. Michael G.
Hummer, M.D., stated in a report to Vista Life Insurance Company on April 2, 1992, that "these
[symptoms] all support severe chronic pain syndrome from her back injury sustained while on the
job on 7-10-89. At this time I feel Ms. Littlefield has been and continues to be totally disabled
from any type of gainful employment. I feel that she has been this way essentially since her injury
of 7-10-89. I feel that this is permanent. I feel that she is totally and permanently disabled from
obtaining and/or maintaining any gainful employment." Dr. James L. Smith, Jr., M.D., stated
in his report dated November 12, 1991: "[T]he patient is disabled according to the definition
'completely unable to perform any and every duty of her usual occupation as MHMR S/A.' She
could not presently perform her usual occupation. At this time she is totally disabled within the
scope of her education and experience." 

 The State countered this testimony by showing that much of Littlefield's incapacity
to work resulted from factors other than her job-related injury. For example, the State argued that
one of her treating physicians, Dr. Edmond, questioned Littlefield's veracity when he stated in
his report: "The strong degree of functional overlay on the examination and the symptoms well
out of proportion to the degree of injury, must be tempered with some reassurance in this case,
but this may preclude the patient's returning to employment in a satisfactory fashion. If she is
unable to return to work in two weeks because of her symptoms, I think it becomes a social issue
rather than a medical issue, given the lack of objective findings, though." 

 In addition, Littlefield was examined by another physician, Dr. Joe T. Powell, who
diagnosed a "functional overlay" or an embellishment by Littlefield of her symptoms. He stated
in his report:



I would also wonder about the work situation, compensation issues, etc. in this
case. She is off work, still drawing workers' compensation, etc. This physician,
honestly, does not see enough physical residual at this point that would preclude
her from resuming job activities on the basis of the original injuries at this point. 
It is felt that these were, at most, sprain injuries. It is understood that she has
established a so-called "chronic pain" behavior pattern, but I really doubt that this
is all from "sprain" residual . . . . One would suspect that so long as pain
complaints gain her statement from the health professionals that she cannot return
to work, that the pain complaints will persist at their present level.



 Finally, the State proved that Littlefield suffered from prior injuries, illnesses, and
unrelated health problems. One of Littlefield's treating physicians, Dr. Michael G. Hummer,
testified that he would change his opinion "about Ms. Littlefield's symptoms and the cause of her
symptoms if [he] knew she had other injuries." The evidence established that Littlefield had
suffered at least four other injuries: (1) an injury to her back in 1976; (2) an injury to her left
arm, forearm, wrist, shoulder, and neck on April 15, 1987; (3) an injury to her back on May 16,
1988; and (4) an injury to her right arm on April 1, 1989. Littlefield did not report any of these
injuries to Dr. Hummer. 

 Based upon all of the evidence presented, the jury found partial and temporary
incapacity as opposed to total and permanent incapacity. The jury is the sole judge of the
credibility of the witnesses and the weight to be given their testimony. Ethicon, Inc. v. Martinez,
835 S.W.2d 826, 834 (Tex. App.--Austin 1992, writ denied). The jury is free to accept or reject
the testimony of any witness, including an expert witness. McGalliard v. Kuhlmann, 722 S.W.2d
694, 697 (Tex. 1986). Opinion testimony does not establish any material fact as a matter of law
and is never binding on the trier of fact. Broussard v. Moon, 431 S.W.2d 534, 537 (Tex. 1968);
Williams v. Lemens, 609 S.W.2d 596, 600 (Tex. Civ. App.--Austin 1980, no writ). The mere
qualification of a witness as an expert does not prevent the fact-finder from exercising
considerable judgment regarding the reliability of opinion testimony. Luttes v. State, 324 S.W.2d
167, 189 (Tex. 1958). Therefore, even if Littlefield's treating physicians found her to be totally
incapacitated for various periods of time, the jury was not bound to accept their opinions,
especially when the evidence was disputed.

 In contending that this jury verdict cannot stand, Littlefield relies primarily on
personal injury cases in which the appellate courts have reversed a jury finding of "zero
damages." See Schmeltekopf v. Johnson Well Serv., 810 S.W.2d 865 (Tex. App.--Austin 1991,
no writ); Horn v. State Farm Ins. Co., 567 S.W.2d 266 (Tex. Civ. App.--Tyler 1978, no writ). 
Littlefield's reliance on Schmeltekopf and Horn is misplaced because the cases are clearly
distinguishable. Both cases involved automobile accidents in which the jury, in the face of
overwhelming evidence of serious bodily injuries, refused to award any damages. The instant
case presents a far different picture. Here, the jury was properly instructed on the definitions of
"total incapacity" and "partial incapacity." The medical evidence was hotly contested and often
conflicting. The jury's verdict did not reflect a finding of no incapacity. Rather, the jury, in its
discretion, found partial and temporary incapacity, as opposed to the total and permanent
incapacity Littlefield urged.

 Finally, Littlefield contends that the fact that the State paid some weekly
compensation benefits to her after the injury constitutes some evidence of total incapacity. The
Texas Supreme Court has repeatedly held that voluntary payment of weekly compensation benefits
does not prevent a carrier from contesting the extent and duration of the claimant's incapacity. 
Hartford Accident & Indem. Co. v. Hale, 400 S.W.2d 310, 313 (Tex. 1966); Southern
Underwriters v. Schoolcraft, 158 S.W.2d 991, 995 (Tex. 1942). The rationale for these holdings
is that courts should encourage prompt payment of benefits to injured employees, and prompt
payment is more likely to occur if the payments cannot be used as an admission of liability. Hale,
400 S.W.2d at 313; Schoolcraft, 158 S.W.2d at 995.





CONCLUSION


 We conclude that the evidence presented at trial supported the jury's verdict in this
cause. We overrule Littlefield's points of error and affirm the judgment of the district court.



 

 Mack Kidd, Justice

Before Justices Aboussie, Jones, and Kidd

Affirmed

Filed: December 14, 1994

Do Not Publish